IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN KODL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 3837 |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION, SCHOOL | ) | |
| DISTRICT 45, VILLA PARK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Karen Kodl ("Kodl" or "Plaintiff") brought an action against Defendant Board

of Education, School District 45, Villa Park (the "School District" or "Defendant") alleging sex

discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.*, and age discrimination and retaliation under the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*  Before the Court is Defendant's

motion for summary judgment.  For the following reasons, the Court grants Defendant's motion.

## BACKGROUND[1]

### I.    The Parties

The School District is located in Villa Park, Illinois.  (R. 38-1; Def.'s Stmt. of Mat. Facts

("Def's SMF") at ¶ 2.)  It includes six elementary schools and two middle schools.  (*Id.*)

William Schewe is the Superintendent of the School District.  (*Id.*)  Carol Hogfelt is the

Assistant Superintendent of Human Resources for the School District.  (*Id.*)  Susan Schwicardi is

_____

[1] The facts included in this section are a subset of the facts in the record.  Additional facts
are addressed, as appropriate, in the analysis section.

the Assistant Superintendent of Curriculum.  (*Id*. at ¶ 62.)  Anthony Palmisano is the Principal of Jackson Middle School and has held that position since 2001.  (*Id*. at ¶ 3.)  During the relevant time period, the Physical Education ("P.E.") teachers at Jackson Middle School, other than Plaintiff, included: Linda Rajca, Jeff Stone, Jed Ramsey, Mike Finke, Tisha Alvarez, and Ron Bent.  (*Id*. at ¶ 8.)  Eric Willis is a mathematics teacher who also taught P.E. classes.  (*Id*. at ¶ 10.)  As of March 24, 2006, the ages of these individuals were as follows:  Dr. Schewe was sixty; Ms. Hogfelt was fifty-nine; Ms. Schwicardi was fifty-seven; Mr. Palmisano was thirty-six; Ms. Rajca was fifty-four; Mr. Stone was fifty-nine; Mr. Ramsey was thirty-three; Mr. Finke was thirty-three; Ms. Alvarez was thirty-one; Mr. Bent was thirty-five; and Mr. Willis was thirty-seven.  (*Id*. at ¶¶ 2, 3, 8, 9, 62.)  In 2003 and 2004, Mr. Willis was part of a group of seventh-grade teachers known as the "Maroon Team."  (R. 47-1; Pl.'s Stmt. of Mat. Facts ("Pl.'s SMF") at ¶ 12.)  The teachers on the Maroon Team were friends and had a close relationship.  (*Id*.)  Besides Mr. Willis, members of the Maroon Team included Peggy Cella, Martha Hayes and Jeff Schaefer.  (*Id*.)

The School District hired Plaintiff as a full-time P.E. teacher in 1987.  (R. 38-1; Def.'s SMF at ¶ 4.)  She worked at Jackson Middle School from 1987 to 2004.  (*Id*.)  Plaintiff held supplemental pay positions each year that she taught at Jackson.  (R. 47-1; Pl.'s SMF at ¶ 38.)  She is currently employed at Schafer Elementary School.  (R. 38-1; Def.'s SMF at ¶ 4.)  As of March 24, 2006, Plaintiff was forty-eight years of age.  (*Id*.)  At all relevant times, Plaintiff was a member of the Villa Park Education Association (the "Union"), and was familiar with the Union's collective bargaining agreements and their grievance procedures.  (*Id*. at ¶ 5.)  Additionally, Plaintiff received and was familiar with the School District's policies prohibiting

discrimination, harassment and retaliation in the workplace. (*Id*. at ¶ 6.)

## II.    Team Leadership Position[2]

Mr. Stone held the supplemental pay position of P.E. Team Leader until his retirement in 2002. (*Id*. at ¶ 14.) In 2002, Mr. Palmisano proposed dividing the P.E. Team Leader position into two separate positions: "Team Leader" and "Athletic Director." (*Id*. at ¶ 16.) Ms. Hogfelt approved splitting the position. (*Id*. at ¶ 18.) In 2002, Mr. Finke applied for the position of Athletic Director, Ms. Rajca applied for the position of Team Leader, and Plaintiff applied for both positions. (*Id*. at ¶ 19.) Defendant awarded Plaintiff the position of Team Leader, but she rejected the offer. (*Id*. at ¶¶ 19, 20.) Plaintiff filed a grievance based on her belief that the division of the Team Leader position violated the Collective Bargaining Agreement. (*Id*. at ¶ 20.) Plaintiff subsequently instructed the Union to withdraw her grievance. (*Id*. at ¶ 23.)

## III.   Ms. Rajca's 2003 Complaint About Mr. Willis

On or about December 10, 2003, Ms. Rajca submitted a written complaint about Mr. Willis to Mr. Palmisano. (*Id*. at ¶ 32.) Ms. Rajca prepared the complaint in anticipation of a meeting that Mr. Palmisano requested. (*Id*.) Ms. Rajca's complaint stated that she was "complaining about Eric Willis and years of incidents that have manipulated, harassed and intimidated women in district 45." (R. 40-1; Ex. T at D0746.) In her complaint, Ms. Rajca described three examples of Mr. Willis' purported conduct: (1) he and Mr. Ramsey wanted to use the gym for the boys' basketball teams during the girls' volleyball intramurals; (2) he had

---

[2] On November 8, 2005, in ruling on Defendant's motion to dismiss, the Court held that "Kodl is time-barred from asserting claims of gender or age discrimination based on Palmisano's failure to appoint her to the Team Leader position in 2002." *Kodl v. Board of Educ., Sch. Dist. 45, Villa Park*, No. 05 C 3837, 2005 WL 2989891, at *3 (N.D. Ill. Nov. 8, 2005).

3

students relay "snotty" messages to Ms. Kodl; and (3) he requested a meeting with Ms. Rajca and Ms. Kodl and was "very unprofessional and very demeaning." (*Id*. at D0746-48.) Mr. Palmisano and Ms. Hogfelt immediately investigated Ms. Rajca's complaint. (R. 38-1; Def.'s SMF at ¶ 34.) Mr. Palmisano met with Mr. Willis and informed him of the complaint. (*Id*. at ¶ 35.) Additionally, Mr. Palmisano and Ms. Hogfelt interviewed every witness Ms. Rajca and others identified as having relevant knowledge, including Plaintiff, during the course of the investigation. (*Id*.) Plaintiff asked Ms. Hogfelt not to reference her name in connection with Ms. Rajca's complaint. (*Id*. at ¶ 37.) Once they had completed the investigation, Mr. Palmisano and Ms. Hogfelt concluded that Ms. Rajca's complaints about Mr. Willis did not constitute sexual harassment or harassment in general, and, at worst, were petty misunderstandings. (*Id*. at ¶ 41.) Further, they could not substantiate allegations of harassment made by former teachers, which they uncovered during the investigation. (*Id*.) Defendant asserts, and Plaintiff disputes, that the School District issued Mr. Willis a verbal warning against engaging in inappropriate conduct. (*Id*.)

## IV.    Mr. Willis' Conduct During Girls' Volleyball Games

Plaintiff asserts that Mr. Willis harassed her when she coached volleyball matches, and that she reported such conduct to Mr. Palmisano at the end of February 2004. (R. 47-1; Pl.'s SMF at ¶ 23.) Mr. Palmisano denies that Plaintiff reported Mr. Willis' purported harassment to him at that time. (R. 52-1; Def.'s Resp. to Pl.'s SMF at ¶ 23.)

## V.    Plaintiff's and Ms. Rajca's Accusations that Ms. Alvarez Stole the Petty Cash

In early March 2004, Ms. Rajca informed Mr. Palmisano of her belief that Ms. Alvarez had stolen petty cash from the girls' locker room. (R. 38-1; Def.'s SMF at ¶ 44.) Plaintiff joined

Ms. Rajca in accusing Ms. Alvarez of stealing the petty cash. (*Id*.) Ms. Alvarez denied stealing the money. (*Id*. at ¶ 47.) Mr. Palmisano was unable to reach a conclusion as to whether money was missing from the girls' P.E. Department, or whether Ms. Alvarez stole any money. (*Id*.) Further, Mr. Palmisano repeatedly told Plaintiff and Ms. Rajca that there was no proof of any missing money. (*Id*.)

## VI.     Plaintiff's March 2004 Meetings with Mr. Palmisano

In March 2004, Plaintiff met with Mr. Palmisano to discuss her goals for the 2003-2004 school year. (*Id*. at ¶ 49.) Plaintiff asserts that at this meeting, Mr. Palmisano "blindsided" her by telling her that she was the problem in the P.E. Department, and that she had "better change or watch out." (*Id*.) During a meeting with Plaintiff, Mr. Palmisano denied making such statements. (*Id*. at ¶ 50.) Mr. Palmisano also raised the issue of other teachers and staff members expressing concerns about Plaintiff. (*Id*. at ¶¶ 50-52.)

## VII.     Plaintiff's Attempt to Tape-Record Mr. Willis

On or about April 6, 2004, Mr. Willis sent Mr. Palmisano an e-mail indicating that Plaintiff and Ms. Rajca had attempted to secretly tape-record him. (*Id*. at ¶ 56.) Interview notes from April 7, 2004 reflect that during a meeting Plaintiff had with Mr. Palmisano regarding his classroom observations and her bi-annual performance evaluation, Plaintiff admitted that she tried unsuccessfully to tape-record Mr. Willis. (*Id*. at ¶¶ 57, 58.) Plaintiff received a written reprimand in conjunction with this incident. (*Id*. at ¶ 60.) Additionally, Ms. Rajca received a written reprimand for failing to report the attempted tape-recording. (R. 47-1; Pl.'s SMF at ¶ 26.) Plaintiff argues, and Defendant denies, that Ms. Alvarez was involved in the tape-recording incident. (*Id*.) Ms. Alvarez did not receive a written reprimand in connection with this incident.

(*Id.*)

**VIII.  April 2004 Teacher Complaints about Plaintiff and Ms. Rajca**

In response to a request from Mr. Ramsey, on April 23, 2004, a meeting took place with Ms. Hogfelt, Mr. Palmisano, Ms. Schwicardi, Mr. Ramsey, and five other teachers who voluntarily came to support Mr. Ramsey – Mr. Willis, Sue Shupenia, Mr. Schaefer, Ms. Alvarez, and Ms. Hayes.  (R. 38-1; Def.'s SMF at ¶¶ 62, 63.)  During the meeting, the six teachers complained about Plaintiff and Ms. Rajca, and unanimously requested that they be "split up." (*Id.* at ¶ 63.)

**IX.  Plaintiff's 2004 Performance Evaluation**

On April 30, 2004, Mr. Palmisano gave Plaintiff her performance evaluation, and provided her with an overall rating of "satisfactory."  (*Id.* at ¶ 64.)  According to Mr. Palmisano, this evaluation was not "negative."  (*Id.*)  Plaintiff's evaluation included the following statements:  "[t]he area of most concern is that of professionalism.  You have not conducted yourself in a professional manner in several instances."  (*Id.* at ¶ 65.)  The 2004 evaluation set forth examples of Plaintiff's purportedly unprofessional conduct:  (1) interactions with secretaries and other staff members, which made them uncomfortable; (2) attempted tape-recording of a co-worker; and (3) having cried when on a phone call with Mr. Palmisano regarding not being invited to play in a volleyball game.  (*Id.*)  Prior to 2004, Plaintiff received performance ratings of "excellent."  (R. 47-1; Pl.'s SMF at ¶ 30.)

**X.  Plaintiff's Transfer to Schafer Elementary School**

At the end of April 2004, the School District decided to transfer Plaintiff from Jackson Middle School to Schafer Elementary School.  (R. 38-1; Def.'s SMF at ¶ 68.)  Dr. Schewe, Ms.

Hogfelt, Ms. Schwicardi, and Mr. Palmisano participated in the decision-making process that culminated in Plaintiff's transfer. (*Id.*) (R. 50-1; Ex. A at 184.) Mr. Palmisano stated that he did not participate in making the final decision to transfer Plaintiff. (R. 50-1; Ex. A at 184.) On May 7, 2004, Ms. Hogfelt issued a memorandum advising Plaintiff that her transfer to Schafer Elementary School would be effective on August 23, 2004. (R. 38-1; Def.'s SMF at ¶ 69) (R. 50-1; Ex. FF at 000153.) The memorandum states, among other things, that "[t]his transfer is the result of your demonstrated failure to relate in a positive manner with other teachers at Jackson Middle School." (R. 50-1; Ex. FF at 000153.) Defendant filled Plaintiff's former position at Jackson with a twenty-eight year old man. (R. 38-1; Def.'s SMF at ¶ 71.)

On May 27, 2004, after she had received notification of the involuntary transfer, Plaintiff filed five grievances, including one asserting age and sex discrimination claims. (*Id.* at ¶ 72) (R. 47-1; Pl.'s SMF at ¶ 34.) Mr. Palmisano, in his capacity as a school administrator, was the primary subject of Plaintiff's grievances. (R. 47-1; Pl.'s SMF at ¶ 34.) Because Union representatives concluded that Plaintiff's grievances were without merit, they refused to pursue them. (R. 38-1; Def.'s SMF at ¶ 72.) Plaintiff pursued the five grievances through the first two stages of the grievance process, but ceased once the School District denied them. (*Id.*)

After a position opened up in the P.E. Department at Jackson Middle School in October 2004, Plaintiff submitted a written request for a transfer back to that school. (*Id.* at ¶¶ 73-74.) Defendant denied Plaintiff's transfer request, (*id.* at ¶ 74), and hired a woman under the age of forty to fill the position. (R. 47-1; Pl.'s SMF at ¶ 35.)

**ANALYSIS**

## I.      Legal Standards

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Id.* at 255, 106 S. Ct. at 2513. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). With these standards in mind, the Court turns to the merits of Defendant's motion.

## II.      Discrimination Claims

Plaintiff alleges that Defendant discriminated against her on the basis of sex and age. Under the ADEA and Title VII, Plaintiff may prove intentional discrimination using either the direct or indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See*, *e.g.*, *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 833 (7th Cir.

2005) (the *McDonnell Douglas* framework "is applicable whether the discrimination alleged is on the basis of sex, when proceeding pursuant to Title VII, or on the basis of age, under the ADEA."). Plaintiff proceeds under the indirect method of proof. To establish a *prima facie* case of intentional discrimination under the indirect method, Plaintiff must show that: (1) she is a member of a protected class; (2) she reasonably performed to Defendant's legitimate expectations; (3) Defendant took an adverse employment action against her; and (4) Defendant treated her differently than similarly situated employees outside of her protected class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. If Plaintiff makes this showing, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See id.* If Defendant meets this burden, Plaintiff must then show that Defendant's proffered explanation is pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981). The ultimate burden of persuasion remains with Plaintiff at all times. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517-18, 113 S. Ct. 2742, 2752-53, 125 L. Ed. 2d 407 (1993).

## A.    *Prima Facie* Case

Defendant contends that Plaintiff fails to establish a *prima facie* case of discrimination because she did not perform her job duties satisfactorily or suffer an adverse employment action, and similarly situated employees did not receive more favorable treatment.

### (1)    Plaintiff's Job Performance

To establish a *prima facie* case of discrimination, Plaintiff must demonstrate that she met Defendant's legitimate employment expectations. *See*, *e.g.*, *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328 (7th Cir. 2002). To determine whether Plaintiff met Defendant's legitimate

employment expectations, the Court looks to Plaintiff's job performance at the time of her transfer. *See Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998); *see also Peele*, 288 F.3d at 329.

Plaintiff asserts that she met her employer's expectations because she received the highest rating on her reviews for fifteen years prior to her April 2004 review, and on the review following the April 2004 review. These ratings, however, "cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken." *Fortier*, 161 F.3d at 1113. Further, Mr. Palmisano explained that he did not consider Plaintiff's April 2004 performance review to be a negative evaluation. (R. 40-1; Ex. A at 235.) Plaintiff's continued employment with the School District also provides support for her contention that she has met and continues to meet her employer's expectations.

Defendant argues that even though Plaintiff received a satisfactory review at the time in question, she nevertheless failed to meet its legitimate employment expectations because she engaged in unprofessional conduct. "It is axiomatic that an employer may legitimately expect an employee to act professionally, with integrity and not insubordinately." *Vasques v. Fiserv CIR, Inc.*, No. 93 C 7817, 1995 WL 431249, at *8 (N.D. Ill. July 14, 1995); *see also Ulmer v. Bob Watson Chevrolet, Inc.*, No. 97 C 7460, 1999 WL 1101332, at *3 (N.D. Ill. Nov. 29, 1999) ("Evidence that plaintiff was a good salesman does not rebut defendant's argument that plaintiff failed to meet its legitimate expectations, however, because the reason defendant gave for firing plaintiff was not poor performance, but insubordination."). Plaintiff's April 2004 performance review refers to Plaintiff's purportedly unprofessional conduct. Further, Defendant provides uncontroverted evidence that Plaintiff attempted to tape-record a co-worker (and received a

written reprimand for doing so), repeatedly publicly accused a co-worker of stealing, and had six co-workers complain about her behavior. Whether Plaintiff failed to meet her employer's legitimate employment expectations because of such conduct, despite receiving well over a decade of excellent reviews and one satisfactory review during the time period in question, raises a genuine issue of material fact.

### (2) Adverse Employment Action

Next, Plaintiff must establish that Defendant took an adverse employment action against her. "Adverse employment actions include a broad array of actions such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits.'" *McKenzie v. Milwaukee County*, 381 F.3d 619, 625 (7th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998)). "To be actionable, an employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotations omitted). The Seventh Circuit has set forth three general categories of actionable adverse employment actions:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) (citing *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002)).

Plaintiff contends that her involuntary transfer from Jackson Middle School to Schafer Elementary School constitutes an adverse employment action because the supplemental pay positions that she held at Jackson are not available at Schafer. Schafer does not offer interscholastic sports or intramural events to its students. Therefore, Plaintiff cannot hold the position of volleyball coach at Schafer, as she had at Jackson for seventeen years. Plaintiff explains that coaching positions provide teachers both with supplemental pay and with credentials and qualifications that directly affect career development and eligibility for certain positions. The monetary loss and the possible career development impairments that resulted from Plaintiff's transfer are sufficient to establish the third element of Plaintiff's *prima facie* case – an adverse employment action. *See*, *e.g.*, *Herrnreiter*, 315 F.3d at 744 (stating that diminished compensation and lateral transfers that significantly reduce employee's career prospects, among other things, can be actionable adverse employment decisions); *see also Dunbar v. Board of Trs. of the Univ. of Ill.*, No. 96 C 8322, 1998 WL 70594, at *6 (N.D. Ill. Feb. 12, 1998) ("Since defendant does not deny that plaintiff lost supplemental pay, this court must view the facts in the light most favorable to plaintiff and conclude that plaintiff has demonstrated that she suffered an adverse employment action.").

Defendant's arguments in opposition do not require a different result. Defendant asserts that while Schafer does not offer certain supplemental pay positions, such as volleyball coach, it offers other supplemental pay positions. Defendant does not provide any evidence of Schafer's supplemental pay positions or whether Plaintiff was eligible for such positions. Further, at Plaintiff's deposition, in response to a question regarding stipend duties at Schafer, Plaintiff stated "there's none that I can do." (R. 50-1; Ex. C at 276.) Moreover, while Jackson's

supplemental pay positions are not guaranteed to teachers, Plaintiff consistently held such

positions at Jackson.  Accordingly, Plaintiff establishes this element of her *prima facie* case.

(3)      **Treatment of Similarly Situated Employees**

Defendant further argues that Plaintiff cannot establish the fourth element of her *prima*

*facie* case because similarly situated employees did not receive more favorable treatment than

Plaintiff.  To establish that another employee is similarly situated, Plaintiff "must show that there

is someone who is directly comparable to her in all material respects." *Patterson v. Avery*

*Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); s*ee also Greer v. Board of Educ. of the City*

*of Chicago, Illinois*, 267 F.3d 723, 728 (7th Cir. 2001).  In making this determination, the Court

"must look at all relevant factors, the number of which depends on the context of the case."

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).  Further, "in disciplinary

cases – in which a plaintiff claims that [she] was disciplined by [her] employer more harshly

than a similarly situated employee based on some prohibited reason – a plaintiff must show that

[she] is similarly situated with respect to performance, qualifications, and conduct."  *Id.*

(citations omitted).  "This normally entails a showing that the two employees dealt with the same

supervisor, were subject to the same standards, and had engaged in similar conduct without such

differentiating or mitigating circumstances as would distinguish their conduct or the employer's

treatment of them."  *Id.* at 617-18.

**(i) Eric Willis**

Plaintiff asserts that Mr. Willis was a similarly situated employee whom Defendant

treated more favorably.  Mr. Willis was under forty years of age during the relevant time period.

Plaintiff and Mr. Willis had the same supervisor, Mr. Palmisano, and both held coaching

positions at Jackson.  Plaintiff asserts that Mr. Willis received more favorable treatment than Plaintiff because he was not involuntarily transferred after Ms. Rajca filed a complaint against him on December 10, 2003.  Ms. Rajca's complaint stated, among other things:  "I'm complaining about Eric Willis and years of incidents that have manipulated, harassed and intimidated women in district 45."  (R. 50-1; Ex. F at D0746.)  Ms. Rajca specifically complained about three incidents involving Mr. Willis: (1) he and Mr. Ramsey wanted to use the gym during volleyball intramurals; (2) he had students relay "snotty" messages to Ms. Kodl; and (3) he requested a meeting with Ms. Rajca and Ms. Kodl and was "unprofessional and very demeaning."  (*Id.*, Ex. F at D0746-48.)  In a meeting that took place on December 12, 2003, Larry Gould, a teacher at Jackson, confirmed Ms. Rajca's statements and asserted that Mr. Willis and his "followers" caused two other teachers, Cyndi Menza and Christina Graves, to leave Jackson.  (*Id.*, Ex. G. at D0750.)  When Ms. Hogfelt interviewed Ms. Menza and Ms. Graves, they raised additional complaints about Mr. Willis.  Ms. Menza stated, among other things, that Mr. Willis was "loud, confronting, and manipulative," and that he "was not the sole reason she left Jackson."  (*Id.*, Ex. M at D0759.)  Ms. Graves gave specific examples of Mr. Willis' allegedly unprofessional conduct and stated that "Eric is the reason she left Jackson.  Eric scared her.  She can't believe more concerns have not been raised about him.  He will go crazy if anyone speaks up."  (*Id.*, Ex. M at D0759-60.)  Additionally, a parent of a former student raised complaints about Mr. Willis.  (*Id.*, Ex. B at 67-72.)  Mr. Willis was not transferred as a result of these complaints.[3]

---

[3] Defendant asserts, and Plaintiff contests, that Mr. Willis received a verbal warning for his alleged conduct.  (R. 48-1; Def.'s SMF at ¶ 41.)

Defendant argues that Mr. Willis is not a similarly situated employee because he did not receive a written reprimand for attempting to tape-record a co-worker, accuse a co-worker of stealing, or use a hostile tone of voice with Mr. Palmisano or other employees, and he was not the subject of complaints from six teachers. Mr. Willis, however, need not have engaged in the identical behavior as Plaintiff to be considered a similarly situated employee. In discipline cases, an employee "must have engaged in similar – not identical – conduct to qualify as similarly situated." *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005). Mr. Willis' alleged conduct is sufficiently similar to Plaintiff's conduct because it reflects difficulties that he had in interacting with his co-workers, which is the stated basis for Plaintiff's dismissal. *See, e.g.*, *Goodwin v. Board of Trs. of the Univ. of Ill.*, 442 F.3d 611, 619 (7th Cir. 2006) (finding two employees' conduct sufficiently similar to meet the *McDonnell Douglas* requirement even though the conduct was not identical).

Although Mr. Willis' purported conduct is arguably similar to that of Plaintiff, there are differentiating circumstances that may distinguish their conduct. *See Peele*, 288 F.3d at 330. Specifically, Mr. Willis denied that he had engaged in the alleged conduct. Additionally, the School District could not substantiate the complaints against him. In contrast, Plaintiff does not contest that she accused another teacher of stealing or attempted to tape-record a co-worker. Accordingly, a genuine issue of material fact exists as to whether Mr. Willis was a similarly situated employee who was treated more favorably than Plaintiff.

### (ii) Tisha Alvarez

Plaintiff also asserts that Ms. Alvarez is a similarly situated employee whom the School District treated more favorably than Plaintiff. Ms. Alvarez was under forty years of age during

the relevant time period.  She, like Plaintiff, was a teacher and coach at Jackson Middle School, and had Mr. Palmisano as her supervisor.  Plaintiff contends that the School District treated Ms. Alvarez more favorably because she did not receive a written warning for her purported participation in the tape-recording incident, while Plaintiff and Ms. Rajca (both of whom were over forty years of age) received such warnings.[4]  If Ms. Alvarez was a participant in the tape-recording incident, as Plaintiff contends, she received more favorable treatment.  Evidence in the record, however, casts doubt on whether Ms. Alvarez was a participant.  Specifically, there is evidence that Ms. Alvarez reported the tape-recording incident to Mr. Palmisano.  (*See* R. 50-1; Ex. LL at 000152.)  Additionally, unlike Plaintiff, Ms. Alvarez did not admit to attempting to tape-record Mr. Willis.  Accordingly, there is a genuine issue of material fact as to whether Ms. Alvarez was a similarly situated employee who was treated more favorably than Plaintiff.

### B.     Nondiscriminatory Reason for Plaintiff's Transfer and Pretext

Because Plaintiff establishes her *prima facie* case of age and sex discrimination, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.  Defendant argues that the School District transferred Plaintiff because of her "demonstrated failure to relate in a positive manner with other teachers at Jackson Middle School."  (R. 50-1; Ex. FF at 000153.)  In support of this argument, Defendant asserts that six teachers came forward to

---

[4] Plaintiff also argues that Ms. Alvarez received more favorable treatment because the School District did not discipline her after Plaintiff and Ms. Rajca accused her of stealing petty cash from the girls' locker room.  This is not an example of more favorable treatment.  First, Mr. Palmisano was unable to conclude that money was missing, or that Ms. Alvarez stole any money.  Second, Ms. Alvarez denied stealing the money.  Third, this is not an example of "similar conduct."  *See Radue*, 219 F.3d at 618.

complain about Plaintiff, she received a written reprimand for attempting to tape-record a co-worker, and her April 2004 performance review reflected that she had problems with her co-workers. Defendant's specified reason for transferring Plaintiff is sufficient to satisfy its burden. *See*, *e.g.*, *Kahn v. United States Sec'y of Labor*, 64 F.3d 271, 279 (7th Cir. 1995) ("The mere articulation of a lawful reason for [Plaintiff's] firing satisfies the employer's burden."). Further, Plaintiff does not contest that Defendant meets its burden.

Because Defendant provides a legitimate, non-discriminatory reason for its employment decision, Plaintiff must show that Defendant's proffered explanation is pretext for discrimination. *See Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095. "A pretext . . . is a deliberate falsehood." *Forrester v. Rauland-Borg Corp.*, No. 05-4650, __ F.3d __, 2006 WL 1767760, at *3 (7th Cir. June 29, 2006) (citations omitted). "'The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs.'" *Id.* (quoting *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003)). Therefore, "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Id.* at *1.

Plaintiff attempts to show that Defendant's stated reason for transferring her to Schafer – that she was not getting along with her co-workers at Jackson – is pretext for discrimination by comparing Defendant's treatment of her to Defendant's treatment of Mr. Willis and Ms. Alvarez. While a genuine issue of material fact exists as to whether Mr. Willis and Ms. Alvarez were similarly situated employees who received more favorable treatment than Plaintiff, in this case,

such findings alone do not create an inference that Defendant's proffered reason was a lie. Here, Plaintiff does not contest that she engaged in unprofessional conduct, such as attempting to tape-record a co-worker. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 824 (7th Cir. 2006) ("By admitting to the conduct at issue . . . [Plaintiff] is left attacking [Defendant's] leadership and business judgment. That will not suffice."). In contrast, Mr. Willis explicitly denied that he engaged in the conduct of which he was accused, and the School District's investigation did not result in a finding that Mr. Willis committed sexual harassment. Similarly, there is evidence that Ms. Alvarez did not engage in the tape-recording incident, and the School District did not conclude that she acted improperly. Accordingly, Defendant may have been justified in not transferring Mr. Willis and not reprimanding Ms. Alvarez. The Court, however, need not address whether it was a good business decision to transfer Plaintiff and not Mr. Willis, or to issue a written reprimand to Plaintiff and not to Ms. Alvarez. *See Healy v. City of Chicago*, 450 F.3d 732, 742 n.12 (7th Cir. 2006) (the court does not "sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices") (quotations omitted); *see also Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005) (holding that employer's proffered reason for employment action was not pretextual where plaintiff established that a similarly situated employee received more favorable treatment, and explaining that "[i]t would not be appropriate for us to express a view as to whether the sanction imposed against [plaintiff] might be perceived by some individuals as more severe than the infraction justified. Our only job is to assess whether the justifications given by the police department for [plaintiff's] termination are honest."); *Teal v. Henderson*, No. 99-2636, 221 F.3d 1339, 2000 WL 973627, at *3 (7th Cir. July 12, 2000)

(holding that Plaintiff's "evidence fails to establish pretext because she does not specifically refute the facts which support [defendant's] reason for her suspension," even though defendant did not dispute that similarly situated male employees received more favorable treatment than plaintiff).

Plaintiff further states that Defendant's decision to divide the Team Leader position in 2002 to allegedly avoid naming a woman as the head of the P.E. Department, and the decision-making history with respect to the Team Leader position, raise a genuine issue of material fact as to Defendant's motives. The Court disagrees. There is no "causal link" between Defendant's decision to divide the Team Leader position in 2002 and its decision to transfer Plaintiff in 2004. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991) (Plaintiff "does not provide a causal link between the graph and his termination. The graph was generated in 1983, [Plaintiff] was terminated in 1985"); *see also Baron v. City of Highland Park*, No. 97 C 1539, 1998 WL 901700, at *8 (N.D. Ill. Dec. 17, 1998) (emphasizing "the weak causal link between any alleged discrimination . . . and [plaintiff's] failure to receive his promotion"); *Barakat v. Taco Bell, Inc.*, 970 F. Supp. 634, 641 (N.D. Ill. 1997) (finding no pretext where, among other things, manager's "racial slurs" "were not made in conjunction with or at the time of defendant's termination decision"); *Monaco v. Fuddruckers, Inc.*, 789 F. Supp. 944, 952 (N.D. Ill. 1992) (stating that age-based comments were inadequate to show pretext where there was "an insufficient causal link between these comments and the actions taken by defendant"). A significant amount of time and intervening actions separate these two events. Approximately two years and events such as Plaintiff's attempted tape-recording of a co-worker and receipt of a written warning for doing so, purportedly unprofessional conduct during a telephone call with

Mr. Palmisano, and repeated, unsubstantiated accusations that another teacher stole petty cash, in addition to six teachers' complaints about Plaintiff, occurred between the time Defendant divided the Team Leader position and transferred Plaintiff. Accordingly, Defendant's decision to divide the Team Leader position into two positions does not provide evidence of pretext.

Plaintiff also asserts that Mr. Palmisano's inclusion of defamatory statements about her in the 2004 evaluation, reliance on informal comments, and failure to support his findings with documentary evidence establish pretext. These arguments likewise fail to show that Defendant's proffered reason for Plaintiff's transfer was a lie. "[T]o show pretext, [Plaintiff] must show more than that [Defendant's] decision was mistaken, ill considered or foolish, [and] so long as the employer honestly believes those reasons, pretext has not been shown." *Hague*, 436 F.3d at 823 (internal quotations omitted). There is evidence that Plaintiff herself thought Mr. Palmisano honestly believed the statements he made in her 2004 evaluation. Indeed, Plaintiff stated that Mr. Palmisano believed that she had problems with her relationships with her colleagues. (R. 40-1; Ex. C at 183.)

Furthermore, the fact that the 2004 evaluation was "satisfactory" does not create a genuine issue of material fact as to whether Defendant's proffered reason is pretextual. *See*, *e.g.*, *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992) ("The fact that an employee does some things well does not mean that any reason given for his firing is a pretext for discrimination."). For these reasons, Plaintiff fails to present "specific evidence from which the finder of fact may reasonably infer that the proffered reasons to do not represent the truth," and Defendant is entitled to summary judgment as to Plaintiff's ADEA and Title VII discrimination claims. *Hague*, 436 F.3d at 824 (internal quotations omitted).

**III.    Retaliation Claims**

Defendant also moves for summary judgment as to Plaintiff's retaliation claims.  Plaintiff may pursue her retaliation claims under either direct or indirect methods.  *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  Plaintiff's arguments, construed liberally, address both methods of proof.

**A.    Direct Method**

"The direct method requires the plaintiff to show that:  (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two."  *Moser v. Indiana Dep't of Corrs.*, 406 F.3d 895, 903-04 (7th Cir. 2005) (citations omitted); *see also Scaife v. Cook County*, 446 F.3d 735, 741 (7th Cir. 2006).  "The direct method can be supported either with direct or with circumstantial evidence."  *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005); *see also Sylvester v. SOS Children's Vills. Ill., Inc.*, No. 05-4219, __ F.3d __, 2006 WL 1896394, at *1 (7th Cir. July 12, 2006).  For the reasons that follow, Plaintiff fails to establish retaliation under the direct method of proof.

**(1)    Statutorily Protected Expression**

Plaintiff must show that she engaged in statutorily protected activity.  *See*, *e.g.*, *Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity.").  To show that she engaged in such activity, Plaintiff "need not succeed on her sexual harassment claim."  *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).  Instead, Plaintiff need only have a "reasonable belief" that the conduct she challenges violates Title VII or the ADEA.  *Id.*; *see also Jackson v. City of Chicago*, No. 96 C

3636, 1996 WL 734701, at *4 (N.D. Ill. Dec. 18, 1996) ("To satisfy the first element-statutorily protected activity-the plaintiff must demonstrate that he reasonably believed he was challenging conduct that violates Title VII or the ADEA."). Plaintiff asserts that she engaged in statutorily protected expression when she purportedly: (1) asserted claims of age and sex discrimination when the School District decided to divide the Team Leader position into two positions; (2) supported Ms. Rajca in her complaint against Mr. Willis; and (3) reported Mr. Willis' behavior at volleyball games to Mr. Palmisano.

First, Plaintiff argues that she asserted discrimination claims following the division of the Team Leader position. In support of this argument, Plaintiff refers the Court to a memorandum Ms. Hogfelt sent to Dr. Schewe, which primarily addresses Ms. Rajca's concerns. The memorandum also states that Plaintiff filed a grievance that she later withdrew. (R. 50-1; Ex. Z at D0742.) Plaintiff's 2002 grievance asserts a purported violation of Article XVII of an agreement; it does not mention age or sex discrimination. (*Id.*, Ex. V at D0370.) Moreover, in her deposition, Plaintiff agreed that neither age nor sex discrimination was the basis for her grievance. (*Id.*, Ex. C at 97-98.) Plaintiff also states that her name arose in connection with Ms. Rajca's complaints regarding the assignment of the Team Leader position. A reference to Plaintiff contained in a co-worker's complaint does not constitute evidence of Plaintiff's participation in protected expression. Therefore, the evidence in the record does not support Plaintiff's assertion that she engaged in statutorily protected activity when she complained about the division of the Team Leader position.

Next, Plaintiff asserts that she engaged in protected activity when she supported Ms. Rajca in her complaint against Mr. Willis. "[A]ssisting another employee with his (in this case

her) discrimination claim, as well as other endeavors to obtain the employer's compliance with Title VII, is protected 'opposition conduct.'" *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996); *see also Richardson v. Pepsi-Cola Gen. Bottlers, Inc.*, 282 F. Supp. 2d 855, 864 (N.D. Ill. 2003); *Grana v. Illinois Dep't of Transp.*, 232 F. Supp. 2d 879, 885 (N.D. Ill. 2002). The evidence in the record, however, shows that Plaintiff's purported participation in Ms. Rajca's complaint did not rise to the level of being protected conduct. As an initial matter, it is not clear that Ms. Rajca's complaint asserted claims of age or sex discrimination. Indeed, Ms. Rajca admitted that she viewed Mr. Willis' conduct as "harassment in general," not sexual harassment, even though she thought there was a "fine line there." (R. 50-1; Ex. D at 103.) She further stated that Mr. Willis was "very careful not to be sexual." (*Id.*)

Even if Ms. Rajca's complaint raised claims of age and/or sex discrimination, Plaintiff does not provide sufficient evidence of her support of the complaint to show that she engaged in protected expression. As evidence of her participation in Ms. Rajca's complaint, Plaintiff directs the Court to Mr. Palmisano's notes summarizing his meetings with various individuals, including Plaintiff. These notes reflect that Plaintiff did not raise any claims of sex or age discrimination, and that she "felt that any previous misunderstandings were taken care of." (R. 50-1; Ex. DD at D0753.) The notes also reflect that Plaintiff "requested that it would be made clear that she didn't initiate . . . the meeting with [Mr. Palmisano] to file the complaint against Eric." (*Id.* at D0754.) As such, Plaintiff's conduct does not constitute statutorily protected expression. *See*, *e.g.*, *Campbell v. Dominick's Finer Foods, Inc.*, 85 F. Supp. 2d 866, 874 (N.D. Ill. 2000) (holding that Plaintiff did not engage in statutorily protected activity where he only relayed a statement that he had overheard to his employer after he was called into an investigatory

meeting, and he did not oppose or object to the conduct); *see also Thomas v. Ragland*, 324 F. Supp. 2d 950, 971-72 (W.D. Wis. 2004) (finding that plaintiff did not receive Title VII protection for supporting a colleague's sexual harassment claim because she did not voice support for her colleague, and instead only reported conduct that was directed toward her).

Lastly, Plaintiff contends that she reported Mr. Willis' harassing behavior at volleyball games to Mr. Palmisano at the end of February 2004. According to Plaintiff, she voiced her complaint in Mr. Palmisano's office, and did not pursue a written complaint. Mr. Palmisano denies that Plaintiff ever brought such a complaint to him. Construing all facts in a light most favorable to Plaintiff, the Court proceeds as though the February 2004 informal complaint occurred.

For Plaintiff's February 2004 complaint to constitute a statutorily protected activity, Plaintiff must have had a "reasonable belief" that Mr. Willis' conduct violated Title VII or the ADEA. *See Dey*, 28 F.3d at 1458. Plaintiff stated that Mr. Willis' purportedly harassing conduct included statements such as "[m]en are better at [sic] coaches, they prepare their players," "[m]en are better," and "I'm a man coach. And I prepared you where Ms. Kodl doesn't know what she's doing." (R. 50-1; Ex. C at 154-56.) Plaintiff characterized these statements as "so silly – it was silly stuff that should never have been said in front of the students, in front of the parents." (*Id*. at 155.) Plaintiff's own characterization of Mr. Willis' statements as "silly" casts doubt on whether Plaintiff, at the time she complained to Mr. Palmisano, believed such comments violated Title VII or the ADEA.

Even if Plaintiff reasonably believed that Mr. Willis' conduct violated Title VII or the ADEA, her informal complaint was not sufficiently specific to constitute statutorily protected

activity.  As an initial matter, the Seventh Circuit has not yet resolved whether informal complaints constitute protected expression.  *See*, *e.g.*, *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004) (declining to resolve "whether Rhodes engaged in protected activity because she failed to comply with IDOT's request to formally complain in writing"); *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) (noting that the Seventh Circuit has not ruled on the issue of whether informal complaints of discrimination constitute protected expression); *but see Dillard v. Chicago Transit Auth.*, No. 03-3538, 105 Fed. Appx. 107, 111, 2004 WL 1662255, at *3 (7th Cir. July 14, 2004) ("informal oral complaints do not constitute protected expression where an employer maintains a formal process for employees to communicate claims of discrimination").  Other circuits and a number of district courts in this circuit, however, have held that informal complaints may constitute protected activity.  *See*, *e.g.*, *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011-12 (11th Cir. 1989); *Kruger v. Principi*, 420 F. Supp. 2d 896, 910 (N.D. Ill. 2006); *Jones-Walsh v. Town of Cicero*, No. 04 C 6029, 2005 WL 2293671, at *5 (N.D. Ill. Sept. 14, 2005); *Walls v. Turano Baking Co.*, 221 F. Supp. 2d 924, 931 (N.D. Ill. 1998).

Assuming that informal complaints can constitute protected expression, they still must be sufficiently specific so as to inform the employer about the discriminatory activity.  *See Durkin*, 341 F.3d at 614 ("Usually a claim for retaliation is preceded by an obligatory complaint about discriminatory conduct, so that the employer is aware of the mistreatment and the corresponding protected activity."); *see also McKay v. Town & Country Cadillac, Inc.*, No. 97 C 2102, 2002 WL 664024, at *10 (N.D. Ill. Apr. 23, 2002) ("A basic requirement to establishing a prima facie

case of retaliation is that the employer must be aware of the employee's statutorily protected expression before the adverse action is taken against the employee.") (citations omitted).  In *Durkin*, the Seventh Circuit held that an employee's repeated complaints, which were "vague and concerned subject matters other than harassment," and did not adhere to the "formal channels of the City's complaint mechanism," were not statutorily protected activity.  341 F.3d at 615.  Similarly, in *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134 (7th Cir. 1997), the Seventh Circuit held that the plaintiff did not engage in statutorily protected activity where she only raised general complaints about management style, did not explicitly raise claims of sexual harassment to someone in a position of authority, and failed to follow the company's formal reporting procedures.  118 F.3d at 1147; *see also Serino v. Potter*, No. 04-2783, 2006 WL 1073163, at *4 (7th Cir. Apr. 25, 2006) ("A complaint to a supervisor may be a protected form of expression, but there is no evidence that Serino's actions were specific enough to constitute protected activity, in the absence of a formal complaint."); *Woods v. Illinois Dep't of Transp.*, No. 03 CV 4098 JPG, 2005 WL 1691107, at *4 (S.D. Ill. May 31, 2005) (holding that informal complaint was not protected activity where plaintiff "did not complain of race discrimination or any other practice made unlawful by Title VII"); *Schulz v. Varian Med. Sys., Inc.*, 315 F. Supp. 2d 923, 937 (N.D. Ill. 2004) (finding that plaintiff's complaints were "too generic to rise to the level of statutorily-protected activity"); *Drago v. Aetna Plywood, Inc.*, 968 F. Supp. 1251, 1255-56 (N.D. Ill. 1997) (finding that plaintiff's complaints did not constitute statutorily protected expression where she did not explicitly report sexual harassment or other activity that violated Title VII); *cf. Jones-Walsh*, 2005 WL 2293671, at *5 (holding that plaintiff's informal complaints could constitute protected activity where the complaints "unambiguously related to

harassment in the workplace").

Here, Plaintiff did not pursue a written complaint against Mr. Willis in February 2004 even though she admits that she was familiar with the School District's policies prohibiting discrimination, harassment and retaliation in the workplace and the specific complaint procedures contained in the policies. Moreover, Plaintiff did not explicitly raise claims of sexual harassment or harassment on account of age with Mr. Palmisano in February 2004. None of the statements that Mr. Willis purportedly made related to age. Further, Plaintiff characterized Mr. Willis' statements regarding men being better than women as "silly stuff." (R. 50-1; Ex. C at 155.) Accordingly, Plaintiff fails to show that she engaged in statutorily protected conduct.

### (2)    Adverse Employment Action

Assuming, *arguendo*, that Plaintiff engaged in statutorily protected expression, she must also show that she suffered an adverse employment action. As set forth above, Plaintiff presents sufficient evidence to establish that her involuntary transfer to Schafer Elementary School constituted an adverse employment action. In addition to Plaintiff's transfer, she also contends that Defendant's denial of her 2004 request for a voluntary transfer back to Jackson Middle School and the negative statements contained in her April 2004 evaluation were adverse employment actions for purposes of her retaliation claims. Defendant argues that the School District's denial of Plaintiff's request to transfer back to Jackson Middle School did not constitute an adverse employment action because the job title and responsibilities are the same at both schools. The Court disagrees. For the reasons set forth above, Plaintiff has demonstrated that material differences may exist between the position she held at Jackson and the position she now holds at Schafer, and therefore, denial of her transfer request may amount to an adverse

employment decision.

The April 2004 evaluation, however, did not constitute an adverse employment action. First, Plaintiff received a satisfactory rating on her review. Second, according to Mr. Palmisano, her review was not negative. Third, even if her review could be characterized as negative due to the statements contained therein, "negative evaluations, standing alone, do not constitute adverse employment actions." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002); *see also Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions"); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (same).

### (3)    Causal Connection

Next, Plaintiff must show a causal link between her allegedly protected expression and the adverse employment actions. "[C]ircumstantial evidence can establish a causal link if the trier of fact can *infer* intentional discrimination." *Culver*, 416 F.3d at 545-46 (emphasis in original) (citations omitted). "[S]uspicious timing alone rarely is sufficient to create a triable issue." *Moser*, 406 F.3d at 905 (citations omitted); *see also Culver*, 416 F.3d at 546 ("suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link"). Furthermore, "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (citations omitted). "Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Id*.

Here, Plaintiff attempts to establish a causal connection by restating the events that

occurred prior to her transfer to Schafer. Her factual recitation does not provide sufficient evidence to support an inference of a causal link. Plaintiff arguably does not show temporal proximity between her purportedly protected expression and the adverse employment actions. She complained about the division of the Team Leader position in 2002, purportedly supported Ms. Rajca's complaint in December 2003, and complained to Mr. Palmisano about Mr. Willis at the end of February 2004. The School District's decision to transfer Plaintiff did not occur until the end of April 2004, and its decision not to allow Plaintiff to transfer back to Jackson did not occur until October or November 2004. *See*, *e.g.*, *Moser*, 406 F.3d at 905 (finding no causal connection where one month separated the protected activity and the adverse employment action); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002) (finding "the interval between [Plaintiff's] October 1997 EEOC charge and her January 1998 termination, without more, to be too long to support an inference of retaliation"); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (affirming grant of summary judgment as to Plaintiff's retaliation claim where Plaintiff "claims that he was terminated on February 13, 1996 in retaliation for filing his EEOC charge on January 18, 1996"); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (finding no causal connection where two months separated protected expression and discharge); *Schulz*, 315 F. Supp. 2d at 938 (stating that plaintiff failed to demonstrate a causal link where two weeks separated plaintiff's purportedly protected expression and the termination of his employment).

Even if the April 2004 transfer following the February 2004 complaint could be considered "suspicious timing," Plaintiff does not present "other evidence that supports the inference of a causal link." *Culver*, 416 F.3d at 546. Further, there were intervening events –

such as Plaintiff's receipt of a disciplinary warning and six teachers complaining about Plaintiff – that took place between the allegedly protected expression and the adverse employment actions. *See*, *e.g.*, *Moser*, 406 F.3d at 904 (holding that the "record does not suggest a causal link" where "numerous incidents brought [Plaintiff's] professionalism and ability to serve as an affirmative action coordinator into question"); *see also Hubbard v. Blue Cross Blue Shield Ass'n*, 1 F. Supp. 2d 867, 882 (N.D. Ill. 1998) ("the intervening circumstance of [plaintiff's] deteriorating performance broke the chain of causation between these [adverse employment] actions and her protected expression"). Accordingly, Plaintiff fails to show the requisite causal link, and does not establish retaliation under the direct method of proof.

## B.     Indirect Method

Plaintiff likewise fails to establish retaliation under the indirect method of proof. "Under the alternative indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Moser*, 406 F.3d at 903-04 (citations omitted); *see also Treadwell v. Office of the Ill. Sec'y of State*, No. 05-1524, __ F.3d __, 2006 WL 2074817, at *3 (7th Cir. July 27, 2006). If Plaintiff can establish a *prima facie* case of discrimination, the burden shifts to Defendant to provide evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Moser*, 406 F.3d at 904. If Defendant meets its burden, Plaintiff must then establish that Defendant's reason is pretextual. *Id*.

For the reasons set forth above, Plaintiff fails to establish the first element of her *prima*

*facie* case for retaliation – that she engaged in statutorily protected expression. Even if Plaintiff's complaints and alleged support of Ms. Rajca's complaint constituted protected activity and Plaintiff could establish a *prima facie* case of retaliation, her retaliation claims fail nevertheless because she does not show that Defendant's proffered reason for its employment decisions is pretextual. Plaintiff relies on the same arguments to establish pretext for her retaliation claims as she does for her discrimination claims. Plaintiff's arguments, therefore, fail for the reasons addressed in detail above, and Plaintiff does not establish retaliation under the indirect method of proof. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's retaliation claims.

## CONCLUSION

For these reasons, the Court grants Defendant's motion for summary judgment.

Dated: August 1, 2006          ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge